IVA ATKINS, now IVA TRUE, Respondent, v. CHICAGO & ALTON RAILWAY COMPANY et al., Appellants.

Kansas City Court of Appeals, December 5, 1910.

1. **RAILROADS: Negligence: Master and Servant.** Plaintiff sued for damages for death of her husband, who, while at work as a section hand, was struck by a rapidly moving passenger train. When struck, his back was toward the approaching train, and his face toward the section foreman. No warning was given by the engineer, and the warning given by the foreman tended to confuse him. *Held*, that a consideration of all the facts and circumstances leads to the conclusion that the failure of the engineer to give warning was the proximate cause of his death, and that the case was properly submitted to the jury.

2. ———: ———: **Evidence.** Where there is no positive evidence that the engineer did see deceased on the track, but the circumstances show that he must have seen him, the jury might reasonably infer that the engineer did see him when he got upon the track.

3. ———: ———: ———. The admission in evidence of the statement of deceased "How did this thing happen," after he regained consciousness, was not error, as it worked no prejudice to defendant. It was only a natural inquiry from one who was ignorant of the cause of his injury.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller*, Judge.

Affirmed.

*Scarritt, Scarritt & Jones* for appellants.

*John N. Hamilton* and *Robertson & Robertson* for respondent.

BROADDUS, P. J.—The plaintiff sues as the widow of Walter Atkins to recover the sum of five thousand dollars for his death which she alleges resulted from the negligent acts of defendant. After the institution of her suit she intermarried with James A. True.

The deceased came to his death on August 2, 1904, by being struck by a moving passenger train near the town of Higbee, Missouri. Prior to his being struck a car had gotten off the side track, a few feet west of the point where the east end of the side track joins the main track, about a half-mile east of said station. When the car got off, as stated, it injured to some extent the side track and the section gang of which the deceased was a member was engaged in repairing it. At about one o'clock p. m. the track had been repaired sufficiently for use at which time the workmen were informed by the foreman that they could take a short rest. The members of the working gang went over on the south side of the track a short distance east of the place where they had been at work and sat down to finish their dinners, which they had not completed at the noon hour for want of time. About two o'clock the daily passenger train arrived from the west. The approach of the train was heard by the foreman and oth-

ers at which time the foreman announced to the men that "Number 17 was coming and we would have to get out," i. e., to work. The deceased was sitting with the other workmen at the time and, with them, on the announcement of the foreman, got up and began work.

At the point where the men were at work the center of the side track is thirteen feet south of the center of the main track leaving a distance of about eight feet between the two tracks. The approach from the east is on an upward grade. About one and one-half miles east of the place in question there is a bridge or trestle over a ravine. As the train approached, it first came in view of the workmen about one-fourth of a mile distant. There is some conflict as to whether the engineer in charge gave the regular station signal as the train approached.

As defendants' principal contention is that plaintiff did not make out a prima facie case we will call attention to her evidence. One of her witnesses by the name of Franklin who was one of the gang of workmen testified that he was shoveling dirt at the time; that at the time deceased was struck he was near the center of the main track stooping over to pick up a spike; that the boss hallooed at him just before he was struck at which time he made an attempt to get off the track, but it struck him before he succeeded in doing so; and that he was facing west with his back to the train. He was asked: "How far off was the train when you first saw him?" A. "It was not over twenty yards from him." He stated that deceased could have been seen on the track one-fourth of a mile distant, east, and that the whistle was not given. Another witness, George Edwards, who was not a workman but was close by at the time, testified that he saw the train when it came in sight about one-fourth of a mile distant, at which time deceased was on the side track, after which he walked to the main track, picked what he thought a spike, at which time the train was from ninety to one

hundred feet away; that when deceased was struck he was bending over a little forward, and was just in the act of starting away; that just as deceased was stooping over the foreman hallooed to him; that deceased was thrown a distance of twelve or fifteen feet southeast; that he, witness, did not hear any signal, and that the train consisted of seven coaches besides the engine and tender. The witness was asked how many times the foreman hallooed at deceased before he was struck. He answered, "twice." "Q. And the second time he made an attempt to get off the track, did he? A. Yes, he started to the north side and turned and started to the south side. Q. How—he was in the middle of the track? A. Some on the south side." On cross-examination he stated that deceased was struck by the south side of the pilot beam. He was asked when the boss hallooed at deceased if he started towards the north side, and the second time he started towards the south side. He answered, "Yes." Witness further stated that when he got to the south side "he looked back at the train and kind of stopped."

Another workman, by the name of Avery, testified that the train was one hundred and fifty feet away when he first noticed it, at which time deceased was on the track in the act of picking up something; that while deceased was so engaged the boss hallooed at him and that when the boss hallooed the second time deceased started towards the north and then turned back south again and was struck by the south end of the pilot beam.

The defendant's engineer testified that he did not see deceased on the track and did not know that he had struck him until the fireman said to him he thought they had struck some one. The evidence of the fireman was that at the time he had just gotten through attending to the fire when he heard the whistle for the town and that he then got up on the seat box and was there a second and looked out and saw some one struck.

The foreman, Edwards, testified that he told the men that the train was coming; that he directed deceased to take what he called the "jack" and walk up the track; that he laid down to sight for him and saw that he was on the main track, at which time the train was one hundred and ten feet from him and that he hallooed at deceased. He was asked, "What did deceased do then?" He answered: "He made an effort for the north rail and went a few steps, *angling* along and stopped and turned and then made for the south rail and then he stopped in a stooped position and it struck him." Other evidence will be noticed in the course of the opinion.

The petition after making the usual preliminary recitations alleges as grounds for recovery as follows: "Plaintiff further says that it was the duty of the said engineer and fireman and other servants in charge of said engine and train to keep a vigilant lookout for said Walter Atkins so engaged upon the said defendant's track as aforesaid, and it was the duty of those in charge of said engine and train to sound the whistle and ring the bell to give the said Walter Atkins engaged as aforesaid warning of the approach of the said engine and train, but the said engineer and fireman and those in charge of said engine and train negligently and carelessly failed to keep a lookout for the said Walter Atkins when, if they had so looked he could have been seen and his position of peril and danger could have been discovered by them in time to have stopped the train and said engine before it had run upon him and thereby injured and killed him. But on the other hand said engineer and fireman and those in charge of said engine and train of cars negligently and carelessly ran said train of cars and engine at the dangerous and high rate of speed of thirty miles per hour without any notice to him of the approach of said engine and train," etc.

At the close of plaintiff's case and at the close of all the evidence defendant interposed a demurrer to plaintiff's right to recover which the court overruled. The finding and judgment were for plaintiff for five thousand dollars, from which defendant appealed.

As the principal question raised on the appeal is the plaintiff's right to recover on her own showing we will confine our attention mostly to her testimony.

The plaintiff predicates her right to recover upon the theory that defendant's engineer saw the deceased in a position of peril in time to have averted striking him by the exercise of reasonable diligence, and it was submitted to the jury by the court on that single issue. Therefore, the speed of the train and failure of the engineer to perform the statutory duty of giving the signal of its approach to the station are not among the ingredients of negligence to be considered.

It is conceded that the engineer could have seen a person on the track when one-fourth of a mile distant from where the deceased was struck. But plaintiff's evidence tends to show, and so does that of defendants, that he was not seen upon the track until the train had arrived within a distance of from one hundred to one hundred and fifty feet from him. That he might have been seen by the engineer at that distance must also be conceded. Had the engineer at that moment given deceased warning of the proximity of the train he could, by prompt action, have gotten off the track as he would have had something over three second to do so at the rate of speed of the train. This is sufficiently shown by the testimony of witnesses on both sides of the case and there is no conflict as to that matter in the testimony which is to the effect that after he received the warning of the foreman the second time of the near approach of the train, he walked towards the north rail of the track, turned and walked towards the south rail, stooped and was struck by the south end of the pilot beam.

It is contended by defendants that if the deceased did not avail himself of the warning given by the foreman, he would not have heeded one had it been given by the engineer and, therefore, his being struck was not because of the failure of any duty on its part. It is evident from the manner of the deceased that the warning given by the foreman tended to confuse him, otherwise he would not have changed his direction when he started to leave the track. We can very well understand how such a thing might have happened. He was standing with his face towards the foreman and his back toward the engine and train, and, being unconscious of the latter fact, he did not readily comprehend the cause for the warning, and the sudden realization of his anger when he turned and looked back, discomposed him. Had the warning been given by the engineer he would have known at once where the danger lay and, in all probability, would have acted without hesitation and made his escape. At least, it was a matter for the jury. We believe the evidence was sufficient to take plaintiff's case to the jury on the humanitarian doctrine, that notwithstanding deceased's negligence, the defendant's negligence was the proximate cause of his death.

Again, it is insisted that the evidence does not show that the engineer actually saw deceased in peril in time to have given him warning of his danger. It is true there is no positive evidence that he did so see him, but there are circumstances tending to show that he must have seen him when he first appeared on the track. Others who were present and saw him had no better opportunities in that respect than the engineer who was sitting in his cab looking ahead. Under such conditions the jury might reasonably infer that the engineer did see deceased when he came upon the track in front of him at a distance of from one hundred to one hundred and fifty feet away.

Error is assigned as to the admission of the statement of the deceased after he had recovered consciousness. His statement was in the form of a question, viz., "How did this thing happen?" We cannot see how this question could have worked to the prejudice of defendant, admitting it to be incompetent evidence. It is not in any sense the statement of a fact—at most, it was only a natural inquiry from one who was ignorant of the cause of his injury.

In order to impeach the statement of the engineer that he did not see deceased on the track, a witness was called who testified that the engineer said, "I made a mistake. I should have whistled. I've probably killed a man." The admission of this evidence is assigned as error on the ground that "contradictory statements which may be shown for the purpose of impeaching a witness must be of facts pertinent to the issue on trial and which could have been shown in evidence as facts independent of the inconsistencies." [Wojtylak v. Coal Co., 188 Mo. l. c. 289; Hamburger v. Rinkel, 164 Mo. l. c. 407; Roe v. Bank, 167 Mo. l. c. 426.] Applying the rule thus stated the evidence was competent. The issue on trial was, as we have seen, whether the engineer saw deceased on the track in time for him to have made his escape had he been warned. The engineer denied seeing him. The statement goes to show that he did not see him or why should he have said, "I should have whistled." It seems to us the statement was contradictory of his evidence as to that matter.

Exceptions are taken to the remarks of the foreman of the jury after the case had been submitted. After the jury had been out for a while, it seems they were called in by the court who made some inquiry as to whether they had formed a verdict, in response to which the foreman responded that they had been unable to agree, that he was ashamed of them, and that they were a subborn lot of men. It seems that this

statement caused laughter among the bystanders, from which we infer that the remarks were made in a jocular manner. We do not consider that the foreman was guilty of a serious breach of decorum or that his remarks could in any manner have prejudiced one side of the controversy more than the other.

Finding no error in the trial the cause is affirmed. All concur.


## ON REHEARING.


We have examined the record with great care and are satisfied with the conclusion reached in the foregoing opinion. We recognize the soundness of the contention so earnestly pressed by counsel for defendant that "the humanitarian rule cannot be applied in its strictness to employees working on the road and that as to them the rule is different from the rule as to passengers or strangers." The trial judge kept well within the doctrine in the instructions to the jury, since the only hypothesis on which he authorized a verdict for plaintiff was that the engineer actually saw and realized the peril of the deceased in time to have given him a warning signal. Obviously such state of facts, the existence of which we find to be supported by substantial evidence, would call into operation the humanitarian rule. We repeat as pertinent to this case what we said recently in the following excerpt from the opinion in Williamson v. Railroad, 139 Mo. App. l. c. 491:

"When an engineer sees a section hand at work on the track and has good reason to believe the man is aware of the approach of the train, there is, in the bare fact that the man remains on the track until the very last instant, nothing to suggest to the engineer that he is oblivious to his danger and will not step off in time to avoid being struck; but whenever there is

that in the appearance of the section hand that would indicate the existence of real peril, the engineer should exert himself to avoid injuring the man. In such situation, the facts that the man is a section hand and, in the exercise of his duty, should get out of the way, sink into insignificance and give way to the all controlling fact that a human being is in peril and the engineer has the means at hand for saving him."

There are vital differences between the facts of the present case and those considered by the Supreme Court in Degonia v. Railway, 224 Mo. 564, so much relied on by defendant and there is no conflict between what we have said here and the views expressed in the Degonia case. Moreover, we find the respondent is right in her insistence that no matters of exception are before us for review for the reason that the abstract of the record proper fails to show the filing of the bill of exceptions within the time allowed by the court.

The judgment is affirmed. All concur.